JAMES CANN, Judge.
On the 9th day of July, 1951, at about ten-thirty o’clock a. m. of that day, claimant, a resident of the city of Parkersburg, Wood county, West Virginia, was driving his 1950 Buick automobile in an easterly direction on and over state route No. 47, in said Wood county, enroute from Parkersburg to Marlinton, West Virginia. As he rounded a curve on said highway, about 20 miles from said city of Parkersburg, he heard or observed that his traveling bag which was on the rear seat of his automobile, had fallen to the floor thereof. Desiring to stop his automobile in order to replace his bag onto the rear seat, he proceeded to round the curve which led to a straight stretch of said highway about a quarter of a mile in length, and after traveling a few hundred feet thereon he drove onto the berm on the right of said highway and stopped. As he stopped the right front wheel of his automobile slipped over the edge of said berm causing said vehicle to be catapulted over what he described as a steep bank, causing such damages to said automobile that it became necessary to trade the same for a new one at a loss of $1600.00.
Considering all of the testimony introduced at the hearing of this case, the court is more concerned with the testimony of the claimant concerning the occurrence of the accident in question. *125 He states that the morning, of the day this accident occurred, was clear, visibility good, and the highway upon which he was traveling in good condition. As he rounded the curve in question and proceeded on the straight stretch no other motor vehicle was in sight. He further states that the grass on the berm to his right had been cut or mowed, but in such a manner as to give him the impression or illusion that said berm was at least 15 feet in width instead of the 5% or 6 feet in width it actually Was; and relying on said impression or illusion he proceeded on said berm on the assumption of the greater width. Was it necessary for claimant to proceed on said berm at all for the purpose intended? Could he have not, in view of the fact that no other motor vehicle was in sight, stopped his car momentarily on the highway, replaced his bag on the rear seat as intended without even getting out of his car, then proceeded pn his way? Isn’t that what an ordinary person under the same circumstances would have done? But forgetting this for the moment — the claimant and respondent introduced a number of snapshots portraying the surroundings at or near the scene of the accident. Claimant was asked if the pictures introduced by respondent actually or nearly portrayed the scene and surroundings at or near the scene of the accident; his answer was yes. Those pictures, larger and clearer than those introduced by claimant, portrayed a straight stretch of highway with a clear berm along the right side of one proceeding east, and further portrayed along the full distance of the highway and said berm, thick foliage, trees, bushes and weeds. It can be readily ascertained from said pictures that said foliage, trees, bushes and weeds were not on land level with said berm but grew on a bank adjacent thereto, and from this view and from the fact that a barn situate at or near the scene of the accident was far below the level of the said berm, and that a tree at or near the scene of the accident which gave clear evidence that it'was seated way below the level of said road, certainly was indicative that a bank was at or very near from the edge of the road. The berm appears wide enough for any automobile to rest. From the above mentioned pictures, introduced by claimant and respondent, we are unable to understand how claimant was ever given the impression or had the illusion that the berm was much or any wider than it actually was. It was shown from the evidence that the employes *126 of respondent had sometime near the date of this accident mowed the grass on the berm to the point of the bank, but that the foliage, trees, bushes and weeds which grew along the bank were not cut or removed because, as they stated, there was no reason for cutting or removing the same, since an adequate berm existed which could be used by motorists finding the same necessary. The respondent or its agents were under no legal duty to anticipate the unusual, nor to guard against consequences which could not reasonably be expected. Bearing in mind that there were other ways, unattended by danger, if any, and reasonably convenient, which claimant could have used to accomplish his purpose, his testimony does demonstrate that, with full appreciation of the possible danger from the scene which confronted him, he voluntarily accepted the risk when he ventured too far over on the berm, without first making some reasonable attempt to ascertain the width of said berm. Our Supreme Court has stated that the essence of assumption of risk is venturousness.
Where one has knowledge of, or should have knowledge of, any apparent or possible danger, by reason of his surroundings, and under such circumstances, without any special exigency compelling him, he exposes himself to such apparent or possible danger, his act in such case may be deemed to have been done voluntarily.
We have held on numerous occasions that under the act creating the court of claims, an omission of duty on the part of the state agency involved, or its agents must be fully shown before an. award will be made. Such negligence or omission of duty on the part of the respondent or its agents has not been proven to our satisfaction; nor has it been clearly established by the evidence that this claim is one which the state as a sovereign commonwealth should discharge.
Therefore, an award will be denied.